**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ESTATE OF KATHRYN L. MENGES, | : | 1:13-cv-1156 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| STEVEN T. MILLER, Acting | : | |
| Commissioner of the Internal Revenue | : | |
| Service, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

### November 4, 2014

In this tax-related action, Plaintiff, the Estate of Kathryn L. Menges, asserts that Defendant, the Internal Revenue Service, wrongly denied Kathryn Menges' claim for the First-time Homebuyer Tax Credit in the amount of $8,000.  The case is presently before the Court on the parties' cross-motions for summary judgment. For the reasons articulated herein, the Court shall deny Plaintiff's Motion and grant Defendant's Motion.

## I.       BACKGROUND

Betty L. Menges passed away on March 3, 2009, and, in her will, devised real property located at 29 Ridgeway Drive, York, Pennsylvania ("the property"), to her son, N. Christopher Menges, and three grandchildren, Jonathan, Matthew,

and Kathryn Menges, in equal shares.  (Doc. 37, ¶¶ 1-2).  Christopher became the executor of the Estate of Betty L. Menges ("the Estate").  (*Id.* ¶ 3).

On October 12, 2009, Kathryn signed a disclaimer of her interest in the property, and the other beneficiaries executed three deeds.  (*Id.*¶¶ 4-5).  The deeds were recorded on October 16, 2009, as follows:  (1) Grantor, N. Christopher Menges as Executor of the Estate of Betty L. Menges, to Grantees, N. Christopher Menges, Jonathan Menges, and Matthew Menges; (2) Grantors, N. Christopher Menges, Jonathan Menges, and Matthew Menges, to Grantee, Matthew Menges; and (3) Grantor, Matthew Menges, to Grantee, Kathryn Menges.  (*Id.* ¶ 5).

In addition, a Form HUD-1 was signed by Kathryn, Matthew, and the law firm of Menges-McGlaughlin and shows Matthew as receiving the proceeds from the sale.  (*Id.* ¶ 7).  However, Christopher Menges later testified that "it was the estate of Betty Menges getting the funds[, a]s the property was owned by the estate."  (*Id.*).

A total of five mortgages would be recorded on the property.  The first two were signed on October 16, 2009:  one in the amount of $100,000 from Matthew to Kathryn, and one in the amount of $50,000 from Christopher to Kathryn.  (*Id.* ¶ 6).  However, Christopher later testified that the purpose of both mortgages was to protect Kathryn from creditors, that he did not actually lend any money to Kathryn,

and that Matthew also did not lend any money but did receive a $100,000 lien on the property. (*Id.* ¶¶ 10-11). Less than six months later, on April 10, 2010, Christopher and Matthew verified in writing that the aforementioned mortgages were satisfied. (*Id.* ¶ 13).

Subsequently, three other mortgages were executed on the property: on April 26, 2010, Kathryn, Christopher, Christopher's wife, and the Members 1st Federal Credit Union signed a mortgage for $60,000, giving the Credit Union a first lien on the property; on April 30, 2010, Matthew and Kathryn signed a mortgage in the amount of $100,000; and, also on April 30, 2010, Christopher and Kathryn signed a mortgage in the amount of $50,000. (*Id.* ¶¶ 14, 16, 17). As to the latter two mortgages, Christopher similarly testified that the mortgages were purposed to protect Kathryn from creditors, and, again, no money was actually advanced. (*Id.* ¶¶ 16, 17). On January 25, 2012, Matthew filed a satisfaction of mortgage, claiming that a $100,000 mortgage had been satisfied. (*Id.* ¶ 19).

Kathryn Menges died on June 2, 2011. (*Id.* ¶ 23). Before her death, on her 2008 tax return, Kathryn had claimed a First-time Homebuyer Credit in the amount of $8,000, and the IRS determined that she was not entitled to such credit. (*Id.* ¶¶ 21-22). After her death, the property was sold to a third party, and Matthew and Christopher Menges split $52,078 from the sale. (*Id.* ¶ 18). According to

Christopher's testimony, the two divided the proceeds because they had "left" their

money in the property.  (*Id.*).[1]

The Estate of Kathryn Menges ("Plaintiff" or "the Estate") filed a Complaint

(Doc. 1) on April 30, 2013, asserting that Kathryn Menges was wrongly denied the

Tax Credit.  Defendant filed an Answer (Doc. 15), and later, the parties agreed to

submit this matter on cross-motions for summary judgment.  Such motions are

presently pending before the Court (Docs. 39, 41), and the parties have also filed a

stipulation of undisputed facts (Doc. 37) and various memoranda of law (Docs. 40,

42, 43).  We now proceed to disposition of this action.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  FED. R. Civ. P. 56(a).  A dispute is "genuine" only if there is a

sufficient evidentiary basis for a reasonable jury to find for the non-moving party,

and a fact is "material" only if it might affect the outcome of the action under the

---

[1]  The IRS disputes the following factual allegation, which Plaintiff holds as true:
"Christopher Menges borrowed $50,000.00 from Members First Federal Credit Union and re-
loaned it to Kathryn L. Menges so that she could have the $50,000.00 that she needed to
purchase the property and then when Kathryn L. Menges was able to refinance the property by
her own mortgage loan on April 26, 2010, the loan that Christopher Menges had taken out for
Kathryn L. Menges being able to buy the property was paid off in full."  (Doc. 6, p. 6).  This
disagreement, however, is not material to our ultimate legal analysis and does not prevent us
from entering judgment in this matter.

governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162,

172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  A court should view the facts in the light most favorable to the non-

moving party, drawing all reasonable inferences therefrom, and should not evaluate

credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution,*

*L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of

a genuine dispute of material fact, and upon satisfaction of that burden, the non-

movant must go beyond the pleadings, pointing to particular facts that evidence a

genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986)).  In advancing their positions, the parties must support their

factual assertions by citing to specific parts of the record or by "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement

about the facts or the proper inferences that a factfinder could draw from them.

*See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh*

*Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III.   DISCUSSION

The First-time Homebuyer Credit ("FTHBC") applied to the purchase of a principal residence bought on or after April 9, 2008, and before May 1, 2010, and permitted the buyer to claim a tax credit equal to 10% of the purchase price of the home, but not to exceed $8,000.00.  *See* 26 U.S.C. §§ 36(a), (b)(1)(a), (h)(1). Relevantly, the statute defines the term "purchase" as "any acquisition, but only if . . . the property is not acquired from a person related to the person acquiring such property . . .."  *Id.* § 36(c)(3)(A).  The definition of "related persons" includes "an executor of an estate and a beneficiary of such estate" "[e]xcept in the case of a sale or exchange in satisfaction of a pecuniary bequest."  *See id.* §§ 36(c)(5), 267(b)(13).

There are few cases interpreting the executor/beneficiary provision of the "related persons" definition.  In one such action, *Zampella v. Commissioner of Internal Revenue*, No. 2488-11, T.C. Memo 2012-359 (T.C. Dec. 26, 2012), *aff'd*,

6

562 Fed. Appx. 106 (3d Cir. 2014), the petitioner and his brother were devised equal shares of their mother's estate and appointed co-executors.  *See id.* at *1. Petitioner and his brother, as grantors in their representative capacity as coexecutors of the estate, transferred title of certain of the estate's real property to the petitioner as the grantee.  *See id.*  The petitioner later claimed entitlement to the FTHBC.  *See id.* at *2.  The United State Tax Court ruled that the petitioner did not "purchase" the home within the meaning of Section 36 of the statute because petitioner, a beneficiary of the estate, acquired the residence from a "related person," namely, an executor of the estate.  *See id.*  In affirming the decision of the Tax Court, the Third Circuit also applied the doctrine of substance over form, noting that "aside from the fact that [the petitioner] paid one-half the value of the property, rather than the entire value, the substance of the transaction was that [the petitioner] acquired the Property from the Estate."  *Zampella v. C.I.R.*, 562 Fed. Appx. 106, 110 (3d Cir. 2014) (citing *Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978) ("In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed.")).

At the outset, Plaintiff argues that Kathryn disclaimed her interest in the Estate and, by doing so, was no longer a beneficiary of the estate.  Even if Kathryn

could be considered a beneficiary,  Plaintiff argues that Kathryn was not a "related person" within the meaning of the statute.  According to Plaintiff, pursuant to Section 267(b)(13) and *Zampella*, the "related persons" exclusion applies only where "the purchaser [is] *both* a beneficiary of the estate and also an executor of the estate."  (Doc. 40, p. 4 (emphasis added)).  Thus, Plaintiff continues, the FTHBC may be obtained where "the purchaser is buying the property from an Estate of which the purchaser is a beneficiary."  (*Id.*).  In addition, Plaintiff argues that the transaction qualifies as "a sale or exchange in satisfaction of a pecuniary bequest" since "the transaction was an exchange of her twenty-five percent (25%) share of the proceeds of the Estate, which, by definition, is a 'sale or exchange in satisfaction of a pecuniary bequest.'" (*Id.* p. 5).

We hold that Kathryn Menges is not entitled to the FTHBC because Kathryn, a beneficiary, did not "purchase" the subject property within the meaning of the statute but acquired it from a "related person," the executor of her grandmother's estate.  Applying the doctrine of substance over form, the complicated series of legal actions at the heart of this matter were to effectuate a simple objective: the transfer of real property from the Estate of Betty L. Menges to Kathryn Menges, of which she was a beneficiary.

That Kathryn disclaimed her interest in the property does change our

8

analysis. Pennsylvania's disclaimer statute grants a beneficiary the right to disclaim an interest in property devised in a will. *See* 20 Pa.C.S. § 6201. Where a beneficiary asserts her right to disclaim a property interest, she does not, in our view, change her very status as a beneficiary under the will; she merely is no longer compelled to receive the property. *See id.*; *see also* 30 STANDARD PA. PRAC. 2d § 141:4. Further, for purposes of the FTHBC statute and as highlighted by Defendant, "[i]f all the beneficiary had to do was disclaim an interest in property and then purchase it, it would make the statutory language of 26 U.S.C. §§ 36 and 267(a) prohibiting a beneficiary of an estate from claiming the Credit when purchasing real property from the estate meaningless." (Doc. 42, p. 4).

In addition, Plaintiff's argument that the "related persons" exclusion applies only where the home-buyer is both executor and beneficiary of the estate is contravened by the plain language of the statute. Section 267, by its terms, regards "transactions *between* related taxpayers," meaning that it contemplates transactions involving more than one person. 26 U.S.C. § 267 (emphasis added) (entitled "Losses, expenses, and interest with respect to transactions between related taxpayers"). Logically, the statute's application to "an executor of an estate and a beneficiary of such estate" suggests that the executor and beneficiary are distinct parties. The *Zampella* case is in harmony with this reading. The denial of the

9

FTHBC in that case did not turn on the fact that the petitioner was both executor and beneficiary, but that he purchased a residence from an estate of which he was a beneficiary. *See Zampella*, 562 Fed. Appx. at 110 ("[The petitioner] does not qualify as a first-time homebuyer because the documentation substantiates the Tax Court's findings that he acquired the Property from his mother's Estate.").

Finally, we also reject Plaintiff's argument that the transaction was an "exchange in satisfaction of a pecuniary bequest."  A pecuniary bequest is a gift of cash, and that statutory exception would apply where certain assets must be sold or exchanged in order to effect such a monetary distribution.  The facts of this case do not suggest that the Estate of Betty Menges conferred upon Kathryn such cash gift requiring satisfaction.

## IV.  CONCLUSION

It is clear that in carefully executing three deeds and entering into a total of five mortgages, Kathryn's family members lovingly sought to help her achieve home-ownership, at the same time endeavoring to protect her property from creditors.  But in seeking to achieve these primary objectives, a "purchase" within the meaning of the FTHBC statute was simply not effectuated.  Accordingly, this Court must deny Plaintiff's Motion for Summary Judgment and grant that of Defendant.

An appropriate Order shall issue.